UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

MICHAEL D. GOODSON,

       Petitioner,

v.                                 Case No. 3:20-cv-96-MMH-MCR

SECRETARY, FLORIDA
DEPARTMENT OF CORRECTIONS,
et al.,

       Respondents.

_____

**ORDER**

**I. Status**

Petitioner Michael D. Goodson, an inmate of the Florida penal system, initiated this action by filing a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254 (Petition; Doc. 1).[1] He proceeds on a Second Amended Petition (Doc. 22). In the Second Amended Petition, Goodson challenges a 2013 state court (Duval County, Florida) judgment of convictions for five counts of attempted second degree murder and one count of shooting or throwing deadly missiles. He raises five grounds for relief. See Second Amended Petition at 6-20. Respondents submitted a Response (Response; Doc. 23).

---

[1] For all pleadings and exhibits filed in this case, the Court cites to the document and page numbers as assigned by the Court's Electronic Case Filing System.

1

They also submitted exhibits. <u>See</u> Docs. 18-1 through 18-2, 23-1 through 23-7. Goodson filed a brief in reply (Reply; Doc. 25) with exhibits (Docs. 25-1 through 25-3). This action is ripe for review.

## II. Relevant Procedural History

On April 26, 2013, the State of Florida (State) charged Goodson by second amended information with five counts of attempted second degree murder and one count of shooting or throwing deadly missiles. <u>See</u> Doc. 18-1 at 72-73. At the conclusion of a trial, a jury found Goodson guilty of the charged offenses. <u>Id.</u> at 103-13. On July 22, 2013, the trial court sentenced Goodson to consecutive terms of imprisonment of twenty years for each count of attempted second degree murder, with a minimum mandatory term of imprisonment of twenty years for each count. <u>Id.</u> at 128-44. The trial court also sentenced Goodson to time served (448 days) for shooting or throwing deadly missiles. <u>Id.</u> On December 10, 2013, the trial court denied Goodson's motion to correct his sentence under Florida Rule of Criminal Procedure 3.800(b)(2). <u>Id.</u> at 928-30.

Goodson appealed his convictions and sentences arguing that the trial court erred in: (1) denying his motion for judgment of acquittal as to the five counts of attempted second degree murder; (2) denying his motion to suppress incriminating statements he made during a videotaped police interview; (3) allowing the jury to view the videotaped interview; and (4)

2

imposing consecutive mandatory minimum sentences as to the five counts of attempted second degree murder. Id. at 966-1002. On November 7, 2014, the First District Court of Appeal (First DCA) per curiam affirmed Goodson's convictions and sentences, citing Walton v. State, 106 So. 3d 522 (Fla. 1st DCA 2013) ("Walton I"). Id. at 1113. The First DCA issued the mandate on November 25, 2014. Id. at 1114.

Goodson subsequently sought to invoke the discretionary jurisdiction of the Florida Supreme Court. Id. at 1116-17. On May 26, 2017, the Florida Supreme Court accepted jurisdiction, quashed the First DCA's decision and remanded Goodson's case to the First DCA "for reconsideration in light of [the Court's] decisions in Walton v. State, 208 So. 3d 60 (Fla. 2016) [("Walton II")], and Williams v. State, 186 So. 3d 989 (Fla. 2016)." Id. at 1141. On remand, in addition to the four arguments raised in his initial brief, Goodson filed a supplemental brief raising a fifth claim that fundamental error occurred when the trial court failed to instruct the jury on attempted manslaughter by act as a lesser included offense of attempted second degree murder. Id. at 1075-79. On September 5, 2017, the First DCA issued a written opinion in which it "reverse[d] [Goodson's] sentence and remand[ed] for resentencing in accordance with Williams and Walton II." Id. at 1144-45. The First DCA affirmed the resolution of the remaining issues Goodson raised in his initial and supplemental briefs without explanation. Id. at 1145

(only stating "We affirm the remaining issues on appeal."). The First DCA issued the mandate on September 26, 2017. <u>Id.</u> at 1146. On November 17, 2017, the trial court resentenced Goodson to concurrent terms of imprisonment of twenty years for each count of attempted second degree murder, with a minimum mandatory term of imprisonment of twenty years. <u>See</u> Doc. 18-2 at 197-211. The trial court reimposed the time served sentence for the shooting or throwing deadly missiles conviction. <u>Id.</u>

On April 1, 2018, Goodson filed a pro se motion for postconviction relief under Florida Rule of Criminal Procedure 3.850 (Rule 3.850 Motion). Doc. 18-2 at 71-89. The postconviction court initially determined the Rule 3.850 Motion was legally insufficient and granted Goodson leave to amend. <u>Id.</u> at 120-21. In his amended Rule 3.850 Motion, Goodson argued his trial counsel was ineffective when she failed to: (1) investigate and incorporate his mental health status and past medical history in the motion to suppress; (2) object and move for a mistrial based on the prosecutor's improper remarks during opening and closing arguments; and (3) object to the trial court's omission of an attempted manslaughter by act instruction. <u>Id.</u> at 123-35. On November 29, 2018, the postconviction court denied relief. <u>Id.</u> at 168-83. The First DCA per curiam affirmed the denial of relief on July 18, 2019, and issued the mandate on August 15, 2019. <u>Id.</u> at 395, 399.

On October 22, 2018, Goodson filed a petition alleging ineffective assistance of appellate counsel under Florida Rule of Appellate Procedure 9.141(d), or in the alternative, petition for writ of habeas corpus.[2] See Doc. 18-2 at 7-14. The First DCA per curiam denied the petition on June 4, 2019, and denied Goodson's motion for rehearing on June 18, 2019. Id. at 60, 63. On September 3, 2019, Goodson filed a pro se petition for writ of habeas corpus alleging manifest injustice. Id. at 402-15. The First DCA dismissed the petition on July 8, 2020, citing Baker v. State, 878 So. 2d 1236 (Fla. 2004), and subsequently denied his motion for rehearing. See Doc. 18-2 at 453, 456. On November 18, 2020, the Florida Supreme Court declined to exercise jurisdiction on Goodson's appeal of the dismissal. Id. at 468. Goodson filed the instant action under 28 U.S.C. § 2254 on January 17, 2020. See Doc. 1.

### III. One-Year Limitations Period

This action was timely filed within the one-year limitations period set forth in 28 U.S.C. § 2244.

### IV. Evidentiary Hearing

In a habeas corpus proceeding, the burden is on the petitioner to establish the need for a federal evidentiary hearing. See Chavez v. Sec'y, Fla. Dep't of Corr., 647 F.3d 1057, 1060 (11th Cir. 2011). "In deciding whether to

---

[2] This was Goodson's second petition alleging ineffective assistance of appellate counsel. His first petition was denied by the First DCA on February 6, 2015. See Doc. 18-2 at 5.

grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." Schriro v. Landrigan, 550 U.S. 465, 474 (2007); Jones v. Sec'y, Fla. Dep't of Corr., 834 F.3d 1299, 1318-19 (11th Cir. 2016). "It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." Schriro, 550 U.S. at 474. The pertinent facts of this case are fully developed in the record before the Court. Because the Court can "adequately assess [Goodson's] claim[s] without further factual development," Turner v. Crosby, 339 F.3d 1247, 1275 (11th Cir. 2003), an evidentiary hearing will not be conducted.

## V. Governing Legal Principles

### A. Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs a state prisoner's federal petition for habeas corpus. See Ledford v. Warden, Ga. Diagnostic & Classification Prison, 818 F.3d 600, 642 (11th Cir. 2016), abrogation recognized on other grounds by Smith v. Comm'r, Ala. Dep't of Corr., 67 F.4th 1335, 1348 (11th Cir. 2023). "'The purpose of AEDPA is to ensure that federal habeas relief functions as a guard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction.'" Id. (quoting Greene v. Fisher, 565 U.S. 34, 38 (2011)). As

6

such, federal habeas review of final state court decisions is "'greatly circumscribed' and 'highly deferential.'" Id. (internal quotation marks omitted) (quoting Hill v. Humphrey, 662 F.3d 1335, 1343 (11th Cir. 2011)).

The first task of the federal habeas court is to identify the last state court decision, if any, that adjudicated the claim on the merits. See Marshall v. Sec'y, Fla. Dep't of Corr., 828 F.3d 1277, 1285 (11th Cir. 2016). The state court need not issue a written opinion explaining its rationale in order for the state court's decision to qualify as an adjudication on the merits. See Harrington v. Richter, 562 U.S. 86, 100 (2011). Where the state court's adjudication on the merits is unaccompanied by an explanation, the United States Supreme Court has instructed:

> [T]he federal court should "look through" the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning.

Wilson v. Sellers, 138 S. Ct. 1188, 1192 (2018). The presumption may be rebutted by showing that the higher state court's adjudication most likely relied on different grounds than the lower state court's reasoned decision, such as persuasive alternative grounds that were briefed or argued to the higher court or obvious in the record it reviewed. Id. at 1192, 1196.

If the claim was "adjudicated on the merits" in state court, § 2254(d) bars relitigation of the claim unless the state court's decision (1) "was

7

contrary to, or involved an unreasonable application of, clearly established

Federal law, as determined by the Supreme Court of the United States;" or

(2) "was based on an unreasonable determination of the facts in light of the

evidence presented in the State court proceeding." 28 U.S.C. § 2254(d);

Richter, 562 U.S. at 97-98. The Eleventh Circuit describes the limited scope

of federal review pursuant to § 2254 as follows:

> First, § 2254(d)(1) provides for federal review for
> claims of state courts' erroneous legal conclusions. As
> explained by the Supreme Court in Williams v.
> Taylor, 529 U.S. 362, 120 S. Ct. 1495, 146 L.Ed.2d
> 389 (2000), § 2254(d)(1) consists of two distinct
> clauses: a "contrary to" clause and an "unreasonable
> application" clause. The "contrary to" clause allows
> for relief only "if the state court arrives at a
> conclusion opposite to that reached by [the Supreme]
> Court on a question of law or if the state court
> decides a case differently than [the Supreme] Court
> has on a set of materially indistinguishable facts." Id.
> at 413, 120 S. Ct. at 1523 (plurality opinion). The
> "unreasonable application" clause allows for relief
> only "if the state court identifies the correct
> governing legal principle from [the Supreme] Court's
> decisions but unreasonably applies that principle to
> the facts of the prisoner's case." Id.
>
> Second, § 2254(d)(2) provides for federal review for
> claims of state courts' erroneous factual
> determinations. Section 2254(d)(2) allows federal
> courts to grant relief only if the state court's denial of
> the petitioner's claim "was based on an unreasonable
> determination of the facts in light of the evidence
> presented in the State court proceeding." 28 U.S.C. §
> 2254(d)(2). The Supreme Court has not yet defined §
> 2254(d)(2)'s "precise relationship" to § 2254(e)(1),

which imposes a burden on the petitioner to rebut the state court's factual findings "by clear and convincing evidence." <u>See</u> <u>Burt v. Titlow</u>, 571 U.S. ---, ---, 134 S. Ct. 10, 15, 187 L.Ed.2d 348 (2013); <u>accord</u> <u>Brumfield v. Cain</u>, 576 U.S. ---, ---, 135 S. Ct. 2269, 2282, 192 L.Ed.2d 356 (2015). Whatever that "precise relationship" may be, "'a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance.'" <u>Titlow</u>, 571 U.S. at ---, 134 S. Ct. at 15 (quoting <u>Wood v. Allen</u>, 558 U.S. 290, 301, 130 S. Ct. 841, 849, 175 L.Ed.2d 738 (2010)).

<u>Tharpe v. Warden</u>, 834 F.3d 1323, 1337 (11th Cir. 2016). Also, deferential review under § 2254(d) generally is limited to the record that was before the state court that adjudicated the claim on the merits. <u>See</u> <u>Cullen v. Pinholster</u>, 563 U.S. 170, 182 (2011) (stating the language in § 2254(d)(1) "requires an examination of the state-court decision at the time it was made").

Thus, "AEDPA erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court." <u>Burt v. Titlow</u>, 134 S. Ct. 10, 16 (2013). "Federal courts may grant habeas relief only when a state court blundered in a manner so 'well understood and comprehended in existing law' and 'was so lacking in justification' that 'there is no possibility fairminded jurists could disagree.'" <u>Tharpe</u>, 834 F.3d at 1338 (quoting <u>Richter</u>, 562 U.S. at 102-03). This standard is "meant to be" a "difficult" one to meet. <u>Richter</u>, 562 U.S. at 102. Thus, to the extent that the petitioner's

9

claims were adjudicated on the merits in the state courts, they must be evaluated under 28 U.S.C. § 2254(d).

## B. Exhaustion/Procedural Default

There are prerequisites to federal habeas review. Before bringing a § 2254 habeas action in federal court, a petitioner must exhaust all state court remedies that are available for challenging his state conviction. See 28 U.S.C. § 2254(b)(1)(A). To exhaust state remedies, the petitioner must "fairly present[]" every issue raised in his federal petition to the state's highest court, either on direct appeal or on collateral review. Castille v. Peoples, 489 U.S. 346, 351 (1989) (emphasis omitted). Thus, to properly exhaust a claim, "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999).

In addressing exhaustion, the United States Supreme Court explained:

> Before seeking a federal writ of habeas corpus, a state prisoner must exhaust available state remedies, 28 U.S.C. § 2254(b)(1), thereby giving the State the ""opportunity to pass upon and correct" alleged violations of its prisoners' federal rights." Duncan v. Henry, 513 U.S. 364, 365, 115 S. Ct. 887, 130 L.Ed.2d 865 (1995) (per curiam) (quoting Picard v. Connor, 404 U.S. 270, 275, 92 S. Ct. 509, 30 L.Ed.2d 438 (1971)). To provide the State with the necessary "opportunity," the prisoner must "fairly present" his claim in each appropriate state court (including a

> state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim. <u>Duncan</u>, <u>supra</u>, at 365-366, 115 S. Ct. 887; <u>O'Sullivan v. Boerckel</u>, 526 U.S. 838, 845, 119 S. Ct. 1728, 144 L.Ed.2d 1 (1999).

<u>Baldwin v. Reese</u>, 541 U.S. 27, 29 (2004).

A state prisoner's failure to properly exhaust available state remedies results in a procedural default which raises a potential bar to federal habeas review. The United States Supreme Court has explained the doctrine of procedural default as follows:

> Federal habeas courts reviewing the constitutionality of a state prisoner's conviction and sentence are guided by rules designed to ensure that state-court judgments are accorded the finality and respect necessary to preserve the integrity of legal proceedings within our system of federalism. These rules include the doctrine of procedural default, under which a federal court will not review the merits of claims, including constitutional claims, that a state court declined to hear because the prisoner failed to abide by a state procedural rule. <u>See</u>, <u>e.g.</u>, <u>Coleman</u>,[3] <u>supra</u>, at 747-748, 111 S. Ct. 2546; <u>Sykes</u>,[4] <u>supra</u>, at 84-85, 97 S. Ct. 2497. A state court's invocation of a procedural rule to deny a prisoner's claims precludes federal review of the claims if, among other requisites, the state procedural rule is a nonfederal ground adequate to support the judgment and the rule is firmly established and consistently followed. <u>See</u>, <u>e.g.</u>, <u>Walker v. Martin</u>, 562 U.S. --, --, 131 S. Ct. 1120, 1127-1128, 179 L.Ed.2d 62 (2011); <u>Beard v. Kindler</u>, 558 U.S. --, --, 130 S. Ct. 612, 617-18, 175 L.Ed.2d 417

---

[3] <u>Coleman v. Thompson</u>, 501 U.S. 722 (1991).
[4] <u>Wainwright v. Sykes</u>, 433 U.S. 72 (1977).

> (2009). The doctrine barring procedurally defaulted claims from being heard is not without exceptions. A prisoner may obtain federal review of a defaulted claim by showing cause for the default and prejudice from a violation of federal law. See Coleman, 501 U.S., at 750, 111 S. Ct. 2546.

Martinez v. Ryan, 132 S. Ct. 1309, 1316 (2012). Thus, procedural defaults may be excused under certain circumstances. Notwithstanding that a claim has been procedurally defaulted, a federal court may still consider the claim if a state habeas petitioner can show either (1) cause for and actual prejudice from the default; or (2) a fundamental miscarriage of justice. Ward v. Hall, 592 F.3d 1144, 1157 (11th Cir. 2010). In order for a petitioner to establish cause,

> the procedural default "must result from some objective factor external to the defense that prevented [him] from raising the claim and which cannot be fairly attributable to his own conduct." McCoy v. Newsome, 953 F.2d 1252, 1258 (11th Cir. 1992) (quoting Carrier, 477 U.S. at 488, 106 S. Ct. 2639).[5] Under the prejudice prong, [a petitioner] must show that "the errors at trial actually and substantially disadvantaged his defense so that he was denied fundamental fairness." Id. at 1261 (quoting Carrier, 477 U.S. at 494, 106 S. Ct. 2639).

Wright v. Hopper, 169 F.3d 695, 706 (11th Cir. 1999).

In the absence of a showing of cause and prejudice, a petitioner may receive consideration on the merits of a procedurally defaulted claim if the

---

[5] Murray v. Carrier, 477 U.S. 478 (1986).

12

petitioner can establish that a fundamental miscarriage of justice, the continued incarceration of one who is actually innocent, otherwise would result. The Eleventh Circuit has explained:

> [I]f a petitioner cannot show cause and prejudice, there remains yet another avenue for him to receive consideration on the merits of his procedurally defaulted claim. "[I]n an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default." Carrier, 477 U.S. at 496, 106 S. Ct. at 2649. "This exception is exceedingly narrow in scope," however, and requires proof of actual innocence, not just legal innocence. Johnson v. Alabama, 256 F.3d 1156, 1171 (11th Cir. 2001).

Ward, 592 F.3d at 1157. "To meet this standard, a petitioner must 'show that it is more likely than not that no reasonable juror would have convicted him' of the underlying offense." Johnson v. Alabama, 256 F.3d 1156, 1171 (11th Cir. 2001) (quoting Schlup v. Delo, 513 U.S. 298, 327 (1995)). Additionally, "'[t]o be credible,' a claim of actual innocence must be based on reliable evidence not presented at trial." Calderon v. Thompson, 523 U.S. 538, 559 (1998) (quoting Schlup, 513 U.S. at 324). With the rarity of such evidence, in most cases, allegations of actual innocence are ultimately summarily rejected. Schlup, 513 U.S. at 324.

## C. Ineffective Assistance of Trial Counsel

"The Sixth Amendment guarantees criminal defendants the effective assistance of counsel. That right is denied when a defense attorney's performance falls below an objective standard of reasonableness and thereby prejudices the defense." Yarborough v. Gentry, 540 U.S. 1, 5 (2003) (per curiam) (first citing Wiggins v. Smith, 539 U.S. 510, 521 (2003); and then Strickland v. Washington, 466 U.S. 668, 687 (1984)).

> To establish deficient performance, a person challenging a conviction must show that "counsel's representation fell below an objective standard of reasonableness." [Strickland,] 466 U.S. at 688, 104 S. Ct. 2052. A court considering a claim of ineffective assistance must apply a "strong presumption" that counsel's representation was within the "wide range" of reasonable professional assistance. Id., at 689, 104 S. Ct. 2052. The challenger's burden is to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id., at 687, 104 S. Ct. 2052.

> With respect to prejudice, a challenger must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id., at 694, 104 S. Ct. 2052. It is not enough "to show that the errors had some conceivable effect on the outcome of the proceeding." Id., at 693, 104 S. Ct. 2052. Counsel's errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Id., at 687, 104 S. Ct. 2052.

Richter, 562 U.S. at 104. The Eleventh Circuit has recognized "the absence of any iron-clad rule requiring a court to tackle one prong of the Strickland test before the other." Ward, 592 F.3d at 1163. Since both prongs of the two-part Strickland test must be satisfied to show a Sixth Amendment violation, "a court need not address the performance prong if the petitioner cannot meet the prejudice prong, and vice-versa." Id. (citing Holladay v. Haley, 209 F.3d 1243, 1248 (11th Cir. 2000)). As stated in Strickland: "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." Strickland, 466 U.S. at 697.

A state court's adjudication of an ineffectiveness claim is accorded great deference.

> "[T]he standard for judging counsel's representation is a most deferential one." Richter, 562 U.S. at ---, 131 S. Ct. at 788. But "[e]stablishing that a state court's application of Strickland was unreasonable under § 2254(d) is all the more difficult. The standards created by Strickland and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so." Id. (citations and quotation marks omitted). "The question is not whether a federal court believes the state court's determination under the Strickland standard was incorrect but whether that determination was unreasonable — a substantially higher threshold." Knowles v. Mirzayance, 556 U.S. 111, 123, 129 S. Ct. 1411, 1420, 173 L.Ed.2d 251 (2009) (quotation marks omitted). If there is "any reasonable argument that counsel satisfied Strickland's deferential standard,"

> then a federal court may not disturb a state-court decision denying the claim. <u>Richter</u>, 562 U.S. at ---, 131 S. Ct. at 788.

<u>Hittson v. GDCP Warden</u>, 759 F.3d 1210, 1248 (11th Cir. 2014); <u>Knowles v. Mirzayance</u>, 556 U.S. 111, 123 (2009). In other words, "[i]n addition to the deference to counsel's performance mandated by <u>Strickland</u>, the AEDPA adds another layer of deference — this one to a state court's decision — when we are considering whether to grant federal habeas relief from a state court's decision." <u>Rutherford v. Crosby</u>, 385 F.3d 1300, 1309 (11th Cir. 2004). As such, "[s]urmounting <u>Strickland</u>'s high bar is never an easy task." <u>Padilla v. Kentucky</u>, 559 U.S. 356, 371 (2010).

## VI. Findings of Fact and Conclusions of Law

### A. Ground One

As Ground One, Goodson asserts the trial court erred in denying his motion for judgment of acquittal as to the five counts of attempted second degree murder. <u>See</u> Second Amended Petition at 6. Goodson argues the evidence adduced at trial was insufficient to prove the elements of attempted second degree murder. <u>Id.</u> Goodson raised a substantially similar claim on direct appeal, <u>see</u> Doc. 18-1 at 979-84; the State filed an answer brief, <u>id.</u> at 1015-29; and the First DCA affirmed the denial of the claim without an explanation, <u>id.</u> at 1145.

Goodson contends that the trial court's denial of his motion for judgment of acquittal violated his federal right to due process. See Second Amended Petition at 6. Upon review of the record, the Court initially determines that Goodson did not fairly present the federal nature of this claim to the state court. The record reflects that at trial, Goodson's counsel moved for judgment of acquittal without any reference to federal law. Doc. 18-1 at 677-81, 732. On direct appeal, Goodson raised the claim in terms of state law only and did not refer to a due process violation or any other federal constitutional right. See id. at 979-84, 1057-58. In the Response, however, Respondents do not argue that Goodson failed to exhaust the federal nature of this claim. Instead, Respondents concede exhaustion and argue that Goodson failed to demonstrate the state court's decision on this claim was contrary to, or involved an unreasonable application of, clearly established federal law. See Response at 20-21. Considering the Response, and for purposes of this Order, the Court finds the federal due process violation claim is exhausted and not procedurally barred from review. See Williams v. Fla. Dep't of Corr., 391 F. App'x 806, 810 (11th Cir. 2010) ("Procedural default is an affirmative defense, and a state waives this defense if it does not allege it in a timely manner during § 2254 proceedings." (citing Moon v. Head, 285 F.3d 1301, 1315 n. 17 (11th Cir. 2002))).

17

Even if not procedurally barred, the claim is nevertheless without merit. In reviewing a motion for judgment of acquittal, trial courts must determine "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979); see also Gudinas v. State, 693 So. 2d 953, 962 (Fla. 1997) (quoting Taylor v. State, 583 So. 2d 323, 328 (Fla. 1991) (holding a motion for judgment of acquittal should not be granted unless "there is no view of the evidence which the jury might take favorable to the opposite party that can be sustained under the law")). The Supreme Court has "made clear that Jackson claims face a high bar in federal habeas proceedings because they are subject to two layers of judicial deference." Coleman v. Johnson, 566 U.S. 650, 651 (2012). In particular, the Supreme Court has explained:

> First, on direct appeal, it is the responsibility of the jury—not the court—to decide what conclusions should be drawn from evidence admitted at trial. A reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury. And second, on habeas review, a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was objectively unreasonable.

Id. (citations and quotations omitted). "[T]he only question under Jackson is whether [the jury's] finding was so insupportable as to fall below the threshold of bare rationality," and the state court's determination that it was not "in turn is entitled to considerable deference under AEDPA." Preston v. Sec'y, Fla. Dep't of Corr., 785 F.3d 449, 463 (11th Cir. 2015) (quoting Coleman, 650 U.S. at 656).

Under Florida law at the time of Goodson's trial, attempted second degree murder had "two elements: '(1) the defendant intentionally committed an act that could have resulted, but did not result, in the death of someone, and (2) the act was imminently dangerous to another and demonstrated a depraved mind without regard for human life.'" Coicou v. State, 39 So. 3d 237, 241 (Fla. 2010) (quoting State v. Florida, 894 So. 2d 941, 945 (Fla. 2005)); see also Doc. 18-1 at 77 (trial court's jury instruction for second degree murder). "[C]ase law and the relevant jury instruction have defined an act as 'imminently dangerous' and evincing a 'depraved mind,' if it is an act that: '(1) a person of ordinary judgment would know is reasonably certain to kill or do serious bodily injury to another; and (2) is done from ill will, hatred, spite or evil intent; and (3) is of such a nature that the act itself indicates an indifference to human life.'" Johnson v. State, 293 So. 3d 46, 53 (Fla. 1st DCA 2020) (quoting Thompson v. State, 257 So. 3d 573, 579 (Fla. 1st DCA 2018)).

During Goodson's trial, the State presented the testimony of multiple eyewitnesses. These witnesses testified that on February 14, 2012, Goodson entered a pool hall with his friend, Derrick Turner, near closing time. See Doc. 18-1 at 435, 460. As closing time approached, the owner of the pool hall and another employee announced last call and asked Goodson and Turner multiple times to wrap up their game, but Goodson and Turner ignored them and kept playing. Id. at 437-38, 461-62, 471-72, 488, 497-98. At closing time, the owner went to the table and began retrieving the balls, at which point Goodson grabbed the rack of balls and threw them at the owner. Id. at 438, 463, 472-73, 488-89. A verbal and physical altercation ensued for some minutes before Goodson and Turner were pushed out of the pool hall and the door was locked. Id. at 438-40, 463-65, 473-74, 489-90. Approximately five minutes later, the owner saw a red laser beam cross an employee's face and then heard multiple gunshots. Id. at 441-42. The building occupants took cover and called 911. Id. at 475, 490, 499. Law enforcement responded to the scene and recovered a bullet fragment and strikes inside the pool hall. Id. at 504-08. They also recovered a cell phone and hat. Id.

Detective Munger was assigned to investigate the shooting. Id. at 589. Detective Munger testified that he spoke with eyewitnesses who provided him with a physical description of Goodson and Turner, and also gave him a tag number for the vehicle Goodson and Turner used. Id. at 591. Detective

20

Munger learned the vehicle was registered to Turner. Id. In addition, information on the recovered cell phone identified Turner as the owner. Id. at 593. Turner was eventually located approximately two months later, and he told Detective Munger that Goodson was with him at the pool hall. Id. at 593-94. Detective Munger then made contact with Goodson, id. at 594, who consented to speaking with detectives regarding the incident, id. at 598-99, 651. Law enforcement recorded his interview, which took place at the Police Memorial Building. Id. at 598. Detective Munger observed that Goodson was "a little bit" intoxicated during the interview, but did not think Goodson was so impaired as to not know where he was and or to understand what was going on. Id. at 600.

Excerpts from Goodson's videotaped interview were played for the jury during the State's case. Id. at 622-62. During the interview, Goodson admitted that he got "mad" and "lashed out" inside the pool hall after being told he and Turner could not finish their last game. Id. at 627. Goodson stated that while he did not intend to hurt anyone, he was "enraged at that point in time." Id. at 654-55, 657. He was "ignited . . . on a fucked up level" and "infuriated" when the owner removed the pool balls. Id. at 655. After leaving the pool hall, Goodson said he "made a point to get a gun" and he shot it in the air at an angle "above the area." Id. at 656-57. He said he wanted to

21

"just pow, pow, pow, pow, just to give them a frame of mind, just to give a scare." Id. at 658.

A forensics expert testified that he performed DNA analysis on the hat found inside the pool hall, and determined that the hat's major DNA profile matched Goodson's DNA profile. Id. at 426-28, 431. Law enforcement personnel also found a laser equipped gun during a consensual search of Goodson's residence. Id. at 513, 611-16, 658-59. A firearms expert testified that he conducted a comparison of test-fired bullets from Goodson's laser equipped gun and the bullet fragment found inside the pool hall, and identified similarities between the markings on the test projectiles and the bullet fragment. Id. at 575-76.

The foregoing evidence was sufficient to send the case to the jury. See Criner v. State, 943 So. 2d 224, 225 (Fla. 1st DCA 2006) ("A judgment of acquittal should only be granted when the jury cannot reasonably view the evidence in any manner favorable to the opposing party."). Although Goodson argues the evidence was insufficient to satisfy the elements of attempted second degree murder, the existence of contradictory, conflicting testimony or evidence "does not warrant a judgment of acquittal because the weight of the evidence and the witnesses' credibility are questions solely for the jury." Fitzpatrick v. State, 900 So. 2d 495, 508 (Fla. 2005). Accordingly, Goodson is not entitled to federal habeas relief on the claim in Ground One.

## B. Ground Two

As Ground Two, Goodson argues the trial court committed fundamental error when it failed to instruct the jury on attempted manslaughter by act as a lesser included offense of attempted second degree murder. See Second Amended Petition at 9.

Goodson raised a substantially similar claim in his supplemental briefing on direct appeal. See Doc. 18-1 at 1075-79. The State filed a supplemental answer brief. Id. at 1082-97. The First DCA affirmed Goodson's convictions, but did not provide an explanation in its written opinion. Id. at 1145. Goodson also raised a substantially similar claim in his state petition for writ of habeas corpus. See Doc. 18-2 at 406-14. In that petition, Goodson argued that the trial court's omission of the instruction deprived him of due process and violated his federal constitutional rights under the Fifth, Sixth, and Fourteenth Amendment. Id. at 412-13. The First DCA per curiam dismissed the petition, citing Baker.[6] See Doc. 18-2 at 453.

---

[6] See Baker, 878 So. 2d at 1245-46 ("[W]e will dismiss as unauthorized, habeas corpus petitions filed by noncapital defendants that seek the kind of collateral postconviction relief available through a motion filed in the sentencing court, and which (1) would be untimely if considered as a motion for postconviction relief under rule 3.850, (2) raise claims that could have been raised at trial or, if properly preserved, on direct appeal of the judgment and sentence, or (3) would be considered a second or successive motion under rule 3.850 that either fails to allege new or different grounds for relief, or alleges new or different grounds for relief that were known or should have been known at the time the first motion was filed.").

In its supplemental answer brief on direct appeal, the State addressed the claim on the merits, see Doc. 8-1 at 1082-97; therefore, the appellate court may have affirmed based on the State's argument. If the appellate court addressed the merits of the claim, the state court's adjudication is entitled to deference under AEDPA. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Therefore, Goodson is not entitled to relief on the basis of this claim.

Even assuming the appellate court's adjudication of the claim is not entitled to deference, the claim is without merit. "State court jury instructions ordinarily comprise issues of state law and are not subject to federal habeas corpus review absent fundamental unfairness." Jones v. Kemp, 794 F.2d 1536, 1540 (11th Cir. 1986); Erickson v. Sec'y for the Dep't of Corr., 243 F. App'x 524, 528 (11th Cir. 2007) ("[E]rrors in state jury instructions are federal constitutional issues only where they render the entire trial fundamentally unfair.") (citing Jones v. Dugger, 888 F.2d 1340,

1343 (11th Cir. 1989)).[7] On federal habeas review, to establish fundamental unfairness, the petitioner must demonstrate "the error 'so infected the entire trial that the resulting conviction violates due process.'" Jacobs v. Singletary, 952 F.2d 1282, 1290 (11th Cir. 1992) (quoting Henderson v. Kibbe, 431 U.S. 145, 154 (1977)); see also Jamerson v. Sec'y for Dep't of Corr., 410 F.3d 682, 688 (11th Cir. 2005) ("Unlike state appellate courts, federal courts on habeas review are constrained to determine only whether the challenged instruction, viewed in the context of both the entire charge and the trial record, so infected the entire trial that the resulting conviction violate[d] due process.") (internal quotation marks and citation omitted). Notably, "[a]n omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement of the law." Henderson, 431 U.S. at 155. In such cases, the burden on petitioner is "especially heavy." Id.

Under Florida law, attempted manslaughter by act constitutes a category one necessarily lesser included offense of attempted second degree murder. See Fla. Std. Jury Instr. (Crim.) 6.4. In Walton II, the Florida Supreme Court held that a trial court commits fundamental error by failing

---

[7] The Court does not rely on unpublished opinions as binding precedent; however, they may be cited in this Order when the Court finds them persuasive on a particular point. See McNamara v. GEICO, 30 F.4th 1055, 1060-61 (11th Cir. 2022); see generally Fed. R. App. P. 32.1; 11th Cir. R. 36-2 ("Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority.").

to instruct the jury on attempted manslaughter by act as a lesser included offense of attempted second degree murder. 208 So. 3d at 64; see also Roberts v. State, 242 So. 3d 296, 299 (Fla. 2018) (determining that the trial court's failure to give the attempted manslaughter by act instruction constituted fundamental error). But any error in failing to instruct the jury in accordance with Roberts, is an error of state law not appropriate for habeas review. See Pinkney v. Sec'y, DOC, 876 F.3d 1290, 1299 (11th Cir. 2017) ("[T]he fundamental error question is an issue of state law, and state law is what the state courts say it is. As the Supreme Court and this Court have repeatedly acknowledged, it is not a federal court's role to examine the propriety of a state court's determination of state law." (citations omitted)). Indeed, the Eleventh Circuit has instructed:

> Federal habeas relief is unavailable "for errors of state law." Estelle v. McGuire, 502 U.S. 62, 67 (1991) (quoting Lewis v. Jeffers, 497 U.S. 764, 780 (1990)). A jury instruction that "was allegedly incorrect under state law is not a basis for habeas relief," id. at 71-72, because federal habeas review "is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." Id. at 68. Unlike state appellate courts, federal courts on habeas review are constrained to determine only whether the challenged instruction, viewed in the context of both the entire charge and the trial record, "'so infected the entire trial that the resulting conviction violate[d] due process.'" Id. at 72 (quoting Cupp v. Naughten, 414 U.S. 141, 147 (1973)).

Jamerson, 410 F.3d at 688 (internal citations modified).

26

Here, the omission of the attempted manslaughter by act instruction did not render Goodson's trial fundamentally unfair. Initially, it appears from the record that Goodson's trial counsel waived the instruction. During the charge conference, the trial court asked defense counsel to identify the lesser included offense instructions that were necessary for the five counts of attempted second degree murder. See Doc. 18-1 at 734-35. Defense counsel only requested instructions for the lesser included offenses of aggravated assault and assault.[8] Id. The trial court then suggested there were other available lesser included offenses for attempted second degree murder, but defense counsel confirmed that only aggravated assault and assault were appropriate based on the evidence presented at trial. Id. at 735; see Walton II, 208 So. 3d at 64 ("The law requires that an instruction be given for any lesser offense all the elements of which are alleged in the accusatory pleadings and supported by the evidence adduced at trial") (quoting State v. Weller, 590 So. 2d 923, 926 (Fla. 1991)) (emphasis added); see also Lathan v. State, 270 So. 3d 1262, 1267 (Fla. 5th DCA 2019) (noting that "there appears to be nothing in either the Walton or Roberts decisions that suggests . . . that a defendant cannot knowingly waive his or her right to have the jury

---

[8] Aggravated assault, assault, aggravated battery, felony battery, and battery are category two lesser included offenses of attempted second degree murder. See Fla. Std. Jury Instr. (Crim.) 6.4.

instructed on any or all available category one lesser included offenses to a given charge.").

Additionally, Goodson does not argue that there was any error in the jury instruction on the greater offense of attempted second degree murder, which was the offense of conviction. Indeed, that instruction tracked the standard instruction for attempted second degree murder. See Fla. Std. Jury Instr. (Crim.) 6.4; Doc. 18-1 at 77. And as discussed in Ground One, the State presented sufficient evidence for the jury to find the elements of attempted second degree murder had been proven beyond a reasonable doubt. See Knight v. State, 286 So. 3d 147, 150 (Fla. 2019) ("[T]he fundamental error test for jury instructions cannot be met where . . . there was no error in the jury instruction for the offense of conviction and there is no claim that the evidence at trial was insufficient to support that conviction. In such circumstances, one cannot plausibly claim that the conviction 'could not have been obtained' without the erroneous lesser included offense instruction or that the error vitiated the basic validity of the trial."). Thus, Goodson has failed to meet the "heavy burden" of establishing that any error arising from the omission of the attempted manslaughter by act instruction so infected the entire trial that his resulting convictions violated due process. See Henderson, 431 U.S. at 155.

28

Moreover, Florida law requires a jury to "render a true verdict according to the law and the evidence." <u>Sanders v. State</u>, 946 So. 2d 953, 958 (Fla. 2006) (emphasis removed). Thus, a jury may convict of a lesser included offense "<u>only</u> if it decide[s] that the main accusation has not been proved beyond a reasonable doubt." <u>Id.</u> (quoting Fla. Std. Jury Instr. (Crim.) 3.4); <u>see also</u> Doc. 18-1 at 78 (instructing jury to consider whether Goodson was guilty of a lesser included offense only if it "decide[d] that the main accusation has not been proven beyond a reasonable doubt"). Indeed, the jury in this case was instructed that if it "return[ed] a verdict of guilty, it should be for the highest offense which has been proven beyond a reasonable doubt." Doc. 18-1 at 100. The jury is presumed to have followed these instructions when it found Goodson guilty of attempted second degree murder. See <u>Brown v. Jones</u>, 255 F.3d 1273, 1280 (11th Cir. 2001) ("We have stated in numerous cases . . . that jurors are presumed to follow the court's instructions."). Accordingly, "even if the lesser-offense instruction[] [for attempted manslaughter by act] had been given, the jury would not have been permitted to convict [Goodson] of the lesser-included offense[] because it had concluded that the evidence established that he was guilty of the greater offense[]" of attempted second degree murder. See <u>Crapser v. Sec'y, Dep't of Corr.</u>, 855 F. App'x 626, 628 (11th Cir. 2021); <u>see also</u> <u>Santiago v. Sec'y, Fla. Dep't of Corr.</u>, 472 F. App'x 888, 889 (11th Cir. 2012) ("The jury in [petitioner's] trial

29

concluded that the evidence against him supported his conviction for the greater offenses on which it was instructed; therefore, even if the lesser-offense instructions had been given, the jury would not have been permitted to convict [petitioner] of the lesser included offenses because it had concluded that the evidence established that he was guilty of the greater offenses."). Accordingly, Goodson is not entitled to federal habeas relief on the claim in Ground Two.

### C. Ground Three

As Ground Three, Goodson argues his appellate counsel was ineffective when she failed to seek a stay of the First DCA's mandate in his direct appeal while Roberts v. State, 168 So. 3d 252 (Fla. 1st DCA 2015), was pending review in the Florida Supreme Court. See Second Amended Petition at 11. In his Reply, Goodson "concedes" Ground Three and represents that he no longer intends to pursue the claim. See Reply at 19. Therefore, the Court deems Ground Three to be withdrawn and will not address it.

### D. Grounds Four and Five

As Grounds Four and Five, Goodson raises ineffective assistance claims in connection with his counsel's efforts to suppress the incriminating statements Goodson made during the videotaped interview with Jacksonville Sheriff's Office detectives. The record reflects that defense counsel filed a motion to suppress the statements on the following two grounds:

1.  The oral statements were obtained . . . in violation of [Goodson's] privilege against self-incrimination[.]

2.  The oral statements . . . were not freely and voluntarily given and were the result of continued and persistent questioning by members of the Jacksonville Sheriff's Office while [Goodson] was intoxicated so as to impair his freedom of will and thereby amounted to compulsion. Just prior to being interrogated, [Goodson] was administered the Chemical Data Test using the Intoxilyzer 5000. [Goodson's] breath alcohol contents were .194 p/210L, .183 p/210L and .179 p/210L.

Doc. 18-1 at 53-54. In the Second Amended Petition, Goodson specifically asserts in Ground Four that his trial counsel was ineffective for failing to investigate his mental state at the time of the police interview. See Second Amended Petition at 14-15. Goodson argues counsel should have raised his mental state in the motion to suppress as a basis to suppress his incriminating statements. Id. at 15. As Ground Five, Goodson asserts that his counsel was ineffective for failing to raise his mental state in conjunction with his level of intoxication as a basis for suppressing his incriminating statements. See Second Amended Petition at 18-20. He argues that "[h]ad counsel utilized the evidence regarding [his] mental health disposition together with his level of intoxication, and [him being] under the influence of psychiatric medication, there is reason to believe" the incriminating statements would have been suppressed. Id. at 19-20.

Goodson raised substantially similar claims in his amended Rule 3.850

Motion. <u>See</u> Doc. 18-2 at 126-30. The postconviction court denied relief,

stating in pertinent part:

> In Ground One, Defendant alleges that counsel
> was ineffective for failing to investigate and present
> certain evidence to establish Defendant's mental
> state during his interrogation that would have led to
> the suppression of his confession. Defendant alleges
> that, after he was apprehended, he was deemed a
> self-harm risk, was fully restrained and placed in a
> red jumpsuit, and was also over two-times the legal
> DUI limit. Defendant alleges that he was taken to
> the Police Memorial Building within fifteen minutes
> of being charged [sic] and retrained [sic], and he was
> interrogated by Detectives Munger and Bodine about
> an unrelated incident. During this interrogation,
> Defendant incriminated himself and was later
> charged with the underlying offenses. Defendant
> claims that he was illegally detained and transported
> to the Police Memorial Building against his will, and
> he did not have an opportunity to regain capacity
> prior to his interrogation. Defendant alleges that he
> met with his attorney between August 2012 and
> January 2013. They reviewed the interrogation tape
> in which Defendant exhibited "depressive
> tendencies." Defendant alleges that counsel was
> informed of his mental health background, including
> his diagnosis of "Psychotic Depressive Disorder."
> Defendant also indicated that he was prescribed
> "psychosis and anxiety medications," as well as pain
> medications from a recent surgery stemming from a
> suicide attempt made on November 17, 2011.
> Defendant alleges that counsel was made aware that
> Defendant's mother and sister were willing and
> available to testify regarding his mental health
> background and medications. Instead, counsel filed a
> motion to suppress solely based on Defendant's
> intoxilyzer results. Defendant claims that counsel's

decision to rely solely on his drunkenness rather than present evidence of his mental health was unreasonable. Defendant claims that had counsel investigated and presented evidence that showed the totality of the circumstances facing Defendant at the time of his interrogation, the outcome of the suppression hearing, as well as the trial, would have been different. Defendant claims that his confession was the only evidence of his involvement in the crime.

Defendant's claim is without merit. Although Defendant does not precisely explain what legal arguments counsel could have presented based on his alleged mental health history, it appears that Defendant is arguing that his confession was not voluntary because he had a diminished mental capacity. Defendant complains that his mental health problem in conjunction with his intoxication on the night of his interrogation would have provided the trial court with a basis to suppress his confession. However, "[i]n Florida, diminished mental capacity does not in and of itself affect the admissibility of a confession, absent improper coercive police conduct." State v. Stewart, 588 So. 2d 1063, 1064 (Fla. 3d DCA 1991); see also Colorado v. Connelly, 479 U.S. 157, 170 (1986) ("The voluntariness of a waiver of [the Fifth Amendment] privilege has always depended on the absence of police overreaching, not on "free choice" in any broader sense of the word."). In his motion, Defendant has not pointed to any improper coercive conduct on the part of the detectives, Rather, he makes a conclusory allegation that "where Defendant was suffering psychologically, it is common for a person subject to the will of his examiners to incriminate himself in an area where tactics are used to elicit an incriminating response which is why counsel should have been present." Defendant also indicates that Detective Munger admitted at the suppression hearing that he knew that Defendant was "somewhat" intoxicated. However, neither of these allegations demonstrates

33

any specific conduct on the part of the detectives that could be construed as an improper or coercive tactic. Furthermore, during the suppression hearing, Detective Munger testified that Defendant indicated to him during questioning that he was not under the influence, that Defendant was rational and understood what was happening, and that he knew where he was. Defendant was informed of his Constitutional rights and agreed to talk with the detectives. Further, the detective indicated that he and [ ] Detective Bodine remained calm during the interview, did not argue with Defendant, and did not raise their tone of voice one time during the questioning. Defendant has failed to point to any conduct on the part of the detectives to indicate that they took impermissible advantage of the situation to the extent that coercion resulted. See DeConigh v. State, 433 So. 2d 501, 503 (Fla. 1983); see also Thomas v. State, 456 So. 2d 454, 458 (Fla. 1984) ("To render a confession inadmissible, however, the delusion or confusion must be visited upon the suspect by his interrogators; if it originates from the suspect's own apprehension, mental state, or lack of factual knowledge, it will not require suppression.").

Finally, to the extent that Defendant alleges that he was illegally detained, Defendant has not explained how his mental health background would have been relevant to this issue. In any case, as the record reflects, Defendant was under arrest for a DUI at the time of the instant confession. Thus, the question of whether Defendant was in custody when he gave his confession was not at issue. Regardless, Defendant received Miranda warnings prior to the interrogation.

Based upon the above, counsel was not ineffective for failing to investigate and present evidence regarding Defendant's mental health history, as such evidence without additional evidence of police misconduct would not have been relevant to the issue of whether Defendant's confession was

> voluntary. Accordingly, this Court finds that Ground
> One is due to be denied.

Doc. 18-2 at 170-73. The First DCA affirmed the denial of relief without a written opinion. Id. at 395, 399.

To the extent that the First DCA decided this claim on the merits,[9] the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Goodson is not entitled to relief on the basis of this claim.

Nevertheless, even if the state appellate court's adjudication of this claim is not entitled to deference, the claim is without merit. "The determination of whether a confession is voluntary depends on whether, under all of the surrounding circumstances, the statement was the product of the accused's free and rational choice." United States v. Jones, 32 F.3d 1512, 1516 (11th Cir. 1994). "A confession that was not the product of free will and

---

[9] In looking through the appellate court's per curiam affirmance to the circuit court's "relevant rationale," the Court presumes that the appellate court "adopted the same reasoning." Wilson, 138 S. Ct. at 1194.

rational[ ] intellect or that was made when the individual's will was overborne by physical, psychological, or drug-induced means, is inadmissible." Parker v. Allen, 565 F.3d 1258, 1280 (11th Cir. 2009). But the fact that a defendant may have consumed alcohol or drugs or had mental health concerns will not necessarily invalidate a Miranda[10] waiver. See Colorado v. Connelly, 479 U.S. 157, 164 (1986) (stating that "a defendant's mental condition, by itself and apart from its relation to official coercion," is insufficient to warrant suppression of a confession); see Arvelo v. Sec'y, Fla. Dep't of Corr., 687 F. App'x 901, 906 (11th Cir. 2017) (citing Burns v. State, 584 So.2d 1073, 1075-76 (Fla. 4th DCA 1991)) (A defendant's intoxication does "not affect the voluntariness of his confession unless it undermines his ability to comprehend in a general way what he is doing and to communicate with coherence and context."); see also Thomas v. State, 456 So.2d 454, 458 (Fla. 1984) (The mere fact that a suspect was under the influence of alcohol when questioned does not render his or her statements inadmissible as involuntary).

Insofar as Goodson asserts that his post-Miranda statements were rendered involuntary due to his mental state, his preexisting mental health conditions, and his level of intoxication, the postconviction court did not err in finding that Goodson failed to establish ineffective assistance of counsel. The

---

[10] Miranda v. Arizona, 384 U.S. 436 (1966).

record reflects that detectives read Goodson his constitutional rights at the beginning of the interview, and Goodson acknowledged that he understood his rights before he signed a waiver form and agreed to speak with detectives. See Doc. 18-1 at 65, 117, 874-75. Goodson does not suggest, nor does the record show, that detectives used any coercive tactics during the interview. Nor does Goodson challenge the specific factual findings the trial court made after viewing the recorded interview regarding his demeanor, mental state, and level of  intoxication at the time of the interview. In particular, the trial court found:

- During the interview, Detective Munger asked Defendant, "Are you under the influence?" Defendant replied, "No".
- During the interview [Goodson] was seated in a chair and appeared comfortable and relaxed but not sleepy or dozing off. [Goodson] appeared alert and aware of his surroundings.
- [Goodson] was sitting upright during the interview, was responsive to questions in a coherent manner and was able to give specific detailed replies to the Detective's questions.
- [Goodson] was courteous saying, "Excuse me", once, when he inadvertently burped.
- There was no evidence to indicate [Goodson] was at any time confused or did not understand the questioning, the questions or his circumstances.
- There was no evidence to indicate that [Goodson] was affected by drugs or medication.
- [Goodson] appeared perfectly sober to the extent the Court expresses surprise that approximately one hour prior to being interrogated his breath alcohol content was, at its highest, .194.

- The Court found no evidence in the interview or the video to suggest that [Goodson's] free will during the interview was compromised. The Court observed no evidence of displeasure or unwillingness of [Goodson] to sit and answer questions.

Doc. 18-1 at 66-67. The above findings do not suggest that Goodson's "will was overborne by physical, psychological, or drug-induced means" such that his <u>Miranda</u> waiver was invalidated. <u>See</u> Parker, 565 F.3d at 1280. And in the absence of any evidence of coercive police conduct during the interview, the record supports the postconviction court's conclusion that defense counsel did not err in failing to include Goodson's mental issues in the motion to suppress. Accordingly, Goodson failed to show deficient performance or resulting prejudice. Therefore, relief on the claims in Grounds Four and Five is due to be denied.

### VII. Certificate of Appealability
### Pursuant to 28 U.S.C. § 2253(c)(1)

If Goodson seeks issuance of a certificate of appealability, the undersigned opines that a certificate of appealability is not warranted. The Court should issue a certificate of appealability only if the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make this substantial showing, Goodson "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," <u>Tennard v. Dretke</u>, 542 U.S. 274,

282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)).

Where a district court has rejected a petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. See Slack, 529 U.S. at 484. However, when the district court has rejected a claim on procedural grounds, the petitioner must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Id. Upon consideration of the record as a whole, the Court will deny a certificate of appealability.

Therefore, it is now

**ORDERED AND ADJUDGED**:

1.     The Second Amended Petition (Doc. 22) is **DENIED**, and this action is **DISMISSED WITH PREJUDICE**.

2.     The Clerk of the Court shall enter judgment denying the Second Amended Petition and dismissing this case with prejudice.

3.      If Goodson appeals the denial of the Second Amended Petition, the Court denies a certificate of appealability. Because the Court has determined that a certificate of appealability is not warranted, the Clerk shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case. Such termination shall serve as a denial of the motion.

4.      The Clerk of the Court is directed to close this case and terminate any pending motions.

**DONE AND ORDERED** at Jacksonville, Florida, this 28th day of March, 2024.

**MARCIA MORALES HOWARD**
United States District Judge

Jax-10  3/8
C:      Michael D. Goodson, #J50205
        Counsel of record